# Richmond

## DR. G. VERNON BOGGS v. VIRGINIA STATE BOARD OF DENTAL EXAMINERS.

April 23, 1973.

Record No. 8073.

Present, All the Justices.

*John R. Bushey, Jr.*, for plaintiff in error.

*T. J. Markow, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

The Virginia State Board of Dental Examiners (Board) found Dr. G. Vernon Boggs guilty of employing and assisting unlicensed persons to perform dental operations upon human beings in violation of Code §§ 54-187(6), 188.[1] His license to practice dentistry was revoked for five years; however, all but six months of the revocation

---

1. § 54-188 has since been repealed. Acts 1972, c. 805

was suspended on certain conditions. Dr. Boggs appealed from the Board's order to the Circuit Court of Page County. The trial court heard evidence *ore tenus* and by order entered April 13, 1972, found that Dr. Boggs had violated the statutes charged, and it sustained the disciplinary action of the Board. Dr. Boggs exercised his right of appeal to this Court, and we granted him a writ of error and supersedeas.

Dr. Boggs contends (1) that the evidence was insufficient to support a finding that he was guilty of the offense charged, and (2) that the circuit court denied him a trial *de novo* as was provided by Code § 54-193[2] in refusing to admit evidence in mitigation of punishment.

The record shows that Dr. Boggs is licensed to practice dentistry in the Commonwealth of Virginia and that his office is located in Luray, Page County. At the hearing before the trial court, the Board presented four of Dr. Boggs' former patients who had secured dentures from him and who had testified at the hearing before the Board. In essence, they testified that before receiving their dentures, female employees in Dr. Boggs' office placed a soft, white or gray substance into their mouths to make a dental impression. The Board introduced evidence which established that no female dentist had registered her license in the clerk's office of the Circuit Court of Page County, as required by law in order to practice dentistry in the county. The Executive Secretary of the Board said that his records show no female dentists practicing in Luray, and a local dentist testified that he did not know of any female dentists practicing there.

The trial court refused to permit Dr. Boggs to produce evidence in mitigation of punishment, and he did not testify at the trial.

■ Persons practicing dentistry are required to be licensed by the Board. Code § 54-168. Code § 54-187(6) empowers the Board to revoke or suspend the license of a dentist who employs unlicensed persons to perform work that can only be legally done by licensed dentists, and § 54-188 empowered the Board to revoke the license of a dentist who aided or assisted an unlicensed person in performing dental operations upon human beings. Code § 54-146 enumerates acts that constitute the practice of dentistry. Included therein is the taking of "impressions."

Dr. Boggs argues that "impressions" is a term of art to the dental profession which refers only to the functional impression made in a reddish brown wax substance from which dentures are fabricated. He says that the impressions described by the witnesses did not fall with-

2. § 54-193 has since been repealed. Acts 1972, c. 805

in the statutory meaning because such impressions were used only to determine the size, shape and design of a patient's mouth before making a functional impression. We are unconvinced by this argument. The statute does not define or qualify "impressions." In *Webster's New International Dictionary* (2d ed. 1948) an impression is defined as "[a]n imprint of the surfaces of the teeth and adjacent portions of the jaw." Regardless of what substance was used in making imprints of the patients' mouths, and for whatever purpose they were used by the dentist, they were "impressions" within the meaning of the statute.

We hold that the evidence was clearly sufficient to support a finding that unlicensed persons employed by Dr. Boggs took "impressions" of some of his patients' mouths.

■ Dr. Boggs' chief complaint is that he was denied a trial *de novo* by the circuit court pursuant to § 54-193.[3] He contends that he was entitled to a relitigation of all issues, including a redetermination of punishment, independent of the finding of the Board, and that he should have been allowed to produce evidence in mitigation of his punishment.

The trial court heard evidence *de novo* as to the violation of the statutes involved and found that the evidence adduced at the trial established a violation of the charges. As to the punishment to be imposed, however, the court adopted the disciplinary action of the Board after expressing uncertainty whether the court had the power to alter or vary the penalty fixed by the Board.

Under the law in effect at the time of the trial (Code § 54-193), Dr. Boggs was entitled to a trial *de novo*. A trial *de novo* includes a hearing on both questions of guilt and disciplinary action. The trial court did redetermine the question of guilt, and we affirm its finding with respect to that question. However, the court did not render an independent adjudication as to the appropriate disciplinary action. We hold that this was error. Dr. Boggs was entitled to introduce relevant evidence in mitigation of his punishment to be considered by the court.

---

3. "§ 54-193. Appeal from action of Board.—Any person who may feel himself aggrieved at the suspension or revocation of his license may, within thirty days appeal from the action of the Board in suspending or revoking the same to the circuit court of the county or the corporation court of the city in which the offense charged originated where the matter shall be heard de novo. The person desiring to appeal from the action of the Board shall, after five days' notice in writing to the secretary of the Board, apply therefor by presenting to the court, or the judge thereof, his affidavit setting forth the fact of the suspension or revocation of his license, and that there has been a miscarriage of justice, or error committed by the Board, or that the decision of the Board was contrary to law or was not supported by the evidence adduced at the hearing. . . ."

However, we note there has been a change in the pertinent statute. Code § 54-193, which granted the right to a trial *de novo*, was repealed by the 1972 General Assembly, and it was replaced by Code § 54-189.2. The new statute provides that appeals from the Board are to be governed by the General Administrative Agencies Act (Code §§ 9-6.1 *et seq*). Code § 9-6.13 thereunder provides that persons aggrieved by a final decision in a proceeding before an administrative agency are entitled to a judicial review "on the record transmitted by the agency and such additional evidence as may be necessary to resolve any controversy as to the correctness of the record." Additionally, the trial court, in its discretion, may hear "*such other evidence as the ends of justice require*," and it may affirm, reverse or modify the decision of the agency or remand the case for further proceedings. (Emphasis added.)

Rules of statutory construction establish that in matters of procedure, § 9-6.13 would apply to any future proceedings in the case at bar. Code § 1-16. We remand the case solely for the trial court to determine, in its discretion, whether the ends of justice require that evidence in mitigation of punishment be received, and to affirm, reverse or modify the decision of the Board with respect to punishment.

*Affirmed in part, reversed in part and remanded.*